IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 120,853

STATE OF KANSAS,
*Appellee*,

v.

COREY EUGENE SAMUELS,
*Appellant*.

SYLLABUS BY THE COURT

1.

Before May 23, 2019, the revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2018 Supp. 21-6801 et seq., directed sentencing judges to classify an out-of-state conviction as a nonperson crime if no Kansas crime compared to the out-of-state crime. But if there was a comparable Kansas crime and the Legislature classified it as a person crime, the sentencing judge should classify the out-of-state conviction as a person crime. The sentencing judge considering the comparability of the crimes needed to decide whether the elements of the out-of-state crime were identical to or narrower than a Kansas person crime.

2.

The Missouri crime of felony first-degree kidnapping, Mo. Rev. Stat. § 565.110 (2004), is comparable to kidnapping as defined by K.S.A. 2017 Supp. 21-5408, a severity level 3, person felony. A Missouri kidnapping under Mo. Rev. Stat. § 565.110 (2004) thus is classified as a person offense when calculating a defendant's criminal history score under the revised KSGA when sentencing for a crime committed before May 23, 2019.

1

Review of the judgment of the Court of Appeals in an unpublished opinion filed May 1, 2020. Appeal from Johnson District Court; JAMES CHARLES DROEGE, judge. Opinion filed July 30, 2021. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, was on the briefs for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmid*t, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, C.J.:  Corey Eugene Samuels argues on appeal that a sentencing judge erred in calculating his criminal history score. He specifically objects to the judge's decision to classify a Missouri kidnapping conviction as a person felony.

In April 2018, when Samuels committed the crimes subject to this appeal, the revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2017 Supp. 21-6801 et seq., directed sentencing judges to classify an out-of-state conviction as a nonperson crime if no Kansas crime compared to the out-of-state crime. But if there was a comparable Kansas crime and the Legislature classified it as a person crime, the sentencing judge should also classify the out-of-state conviction as a person crime. See K.S.A. 2017 Supp. 21-6811(e)(3). The sentencing judge considering the comparability of the crimes needed to decide whether the elements of the out-of-state crime were identical to or narrower than a Kansas person crime. See *State v. Wetrich*, 307 Kan. 552, Syl. ¶ 3, 412 P.3d 984 (2018).

2

Under the *Wetrich* test, Mo. Rev. Stat. § 565.110 (2004), which defines the elements of Samuels' kidnapping conviction, is comparable to kidnapping as defined by K.S.A. 2017 Supp. 21-5408, a severity level 3, person felony. The sentencing judge thus correctly classified Samuels' conviction as a person offense. We affirm his sentence.

## FACTS AND PROCEDURAL BACKGROUND

Samuels reached a plea agreement with the State. The State agreed to dismiss some charges in exchange for Samuels pleading guilty to aggravated intimidation of a witness, aggravated domestic battery, and two counts of violation of a protective order. The events supporting the charges occurred in April 2018—a date important because we apply the law in place when Samuels committed the crimes. See *State v. Keel*, 302 Kan. 560, 590, 357 P.3d 251 (2015).

Samuels pleaded guilty as agreed. Before sentencing, he objected to his criminal history score as calculated in the presentencing report. It reported that Samuels had several Missouri convictions. The report classified some as nonperson crimes; but it classified two first-degree robbery convictions and one kidnapping conviction as person felonies. Because of the three person felonies, Samuels' criminal history classification was A, which subjected him to the most severe presumptive sentence for his primary conviction. In objecting to the classifications and criminal history scoring, Samuels argued the sentencing judge should have classified all his Missouri offenses as nonperson offenses because Kansas had no person felonies comparable to Missouri's first-degree robbery or kidnapping crimes. The sentencing judge rejected his argument and determined each of Samuels' Missouri first-degree robbery and kidnapping convictions was a person felony.

3

On appeal and review, Samuels challenges only the scoring of his Missouri kidnapping conviction under Mo. Rev. Stat. § 565.110 (2004).

A Court of Appeals panel rejected Samuels' challenge and affirmed the sentencing judge's determination that Samuels' criminal history score was A. See *State v. Samuels*, No. 120,853, 2020 WL 2089625 (Kan. App. 2020) (unpublished opinion). Samuels sought this court's review, which we granted.

We have jurisdiction under K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions) and K.S.A. 60-2101(b) (providing Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

ANALYSIS

Our analysis of whether the sentencing judge properly classified Samuels' Missouri kidnapping conviction as a person crime begins with the KSGA, which includes sentencing grids that specify presumptive sentences for Samuels' crimes. A "'presumptive sentence' means the sentence provided in a grid block for an offender classified in that grid block by the combined effect of the crime severity ranking of the offender's current crime of conviction and the offender's criminal history." K.S.A. 2020 Supp. 21-6803(q); see K.S.A. 2020 Supp. 21-6804(f) (applying to nondrug crimes); K.S.A. 2020 Supp. 21-6805(d) (applying to drug crimes; same provision). The criminal history score depends on the defendant's prior convictions, including out-of-state convictions. K.S.A. 2017 Supp. 21-6809; K.S.A. 2017 Supp. 21-6811(e).

Samuels' arguments require us to focus on the KSGA's directions for classifying out-of-state crimes for criminal history purposes. In doing so, we look to statutes in effect

4

when Samuels committed the crimes for which the judge sentenced him. See K.S.A. 2017 Supp. 21-6811(e)(3) ("In designating a crime as person or nonperson, comparable offenses under the Kansas criminal code in effect on the date the current crime of conviction was committed shall be referred to."); *Keel*, 302 Kan. at 590. The 2017 supplement to the Kansas Statutes Annotated includes those statutes applicable in 2018 when Samuels committed the crimes.

In 2017, the KSGA set out a two-step process for classifying out-of-state convictions. First, the KSGA directed the sentencing judge to apply the convicting jurisdiction's classification of the conviction as a felony or misdemeanor crime. K.S.A. 2017 Supp. 21-6811(e)(2). Second, it directed the sentencing judge to classify the defendant's out-of-state conviction as either a person or nonperson offense by comparing the elements of the out-of-state crime to Kansas crimes and considering how Kansas classified comparable crimes. "If the state of Kansas does not have a comparable offense in effect on the date the current crime of conviction was committed, the out-of-state crime shall be classified as a nonperson crime." K.S.A. 2017 Supp. 21-6811(e)(3).

When Samuels committed the crimes at issue in this appeal, K.S.A. 2017 Supp. 21-6811 did not set out a metric for deciding whether a crime was comparable. That changed after Samuels committed the crimes at issue when the Kansas Legislature amended K.S.A. 21-6811 and changed the test for classifying crimes as person and nonperson crimes. See *State v. Baker*, 58 Kan. App. 2d 735, 738-39, 475 P.3d 24 (2020) (discussing amendments). Our holdings today thus apply to crimes committed before May 23, 2019, the effective date of the amendments.

As of the time of Samuels' crimes, however, the statute gave no test for deciding if an out-of-state crime was comparable to a Kansas crime. Courts thus had to construe the

5

statute to discern the legislative intent as to what made crimes comparable. In *Wetrich*, this court held that an out-of-state crime was comparable to a Kansas crime if its elements were identical to or narrower than the Kansas crime. If broader, the out-of-state offense was not comparable, and the sentencing judge had to classify it as a non-person felony. See *Wetrich*, 307 Kan. at 562. "'Elements' are the 'constituent parts' of a crime's legal definition—the things 'the prosecution must prove to sustain a conviction.'" *Mathis v. United States*, 579 U. S. 500, 136 S. Ct. 2243, 2248, 195 L. Ed. 2d 604 (2016) (quoting Black's Law Dictionary 634 [10th ed. 2014]). "Facts, by contrast, are mere real-world things—extraneous to the crime's legal requirements. . . . They are 'circumstance[s]' or 'event[s]' having 'no legal effect [or] consequence':  In particular, they need neither be found by a jury nor admitted by a defendant." 136 S. Ct. at 2248 (quoting Black's Law Dictionary 709).

We thus focus on elements by reviewing the statutory language. To make the comparison between the statutes, courts must interpret the Kansas and out-of-state statutes. Statutory interpretation presents a question of law subject to unlimited review. *Wetrich*, 307 Kan. at 555; see *State v. Obregon*, 309 Kan. 1267, 1270, 444 P.3d 331 (2019). In interpreting statutes, we grant no deference to the district court or the Court of Appeals. But, like those courts, we ascertain the Legislature's intent by examining the statute's wording. If that wording is plain and unambiguous when giving common words their ordinary meaning, we apply it as written. *State v. Valdiviezo-Martinez*, 313 Kan. 614, 617-18, 486 P.3d 1256 (2021).

A side-by-side comparison of Missouri's and Kansas' kidnapping statutes aids the examination of whether the Missouri statute's elements are identical to or broader than Kansas':

6

| Mo. Rev. Stat. § 565.110 (2004) | K.S.A. 2017 Supp. 21-5408 |
| --- | --- |
| A person commits the crime of kidnapping if he unlawfully removes another without his consent from the place where he is found or unlawfully confines another without his consent for a substantial period, for the purpose of | (a) Kidnapping is the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person |
| (1) Holding that person for ransom or reward, or for any other act to be performed or not performed for the return or release of that person; (2) Using the person as a shield or as a hostage; | (1) For ransom, or as a shield or hostage; |
| (4) Facilitating the commission of any felony or flight thereafter; | (2) to facilitate flight or the commission of any crime; |
| (5) Inflicting physical injury on or terrorizing the victim or another; | (3) to inflict bodily injury or to terrorize the victim or another; or |
| (3) Interfering with the performance of any governmental or political function. | (4) to interfere with the performance of any governmental or political function. |

Samuels' challenges focus on the first two rows in this table. The two statutes' wording of these elements differ. The question then becomes whether, despite the difference in wording, the two statutes are nevertheless identical or, if not, whether Missouri's statute is narrower than Kansas'. See *Wetrich*, 307 Kan. at 562 (out-of-state crime comparable to Kansas crime if its elements were identical to or narrower than Kansas crime).

### 1. *"Without his consent" compared to "by force, threat or deception"*

Focusing on the first row, Samuels points out that Missouri's kidnapping statute focuses on the victim's consent to movement, but Kansas' statute focuses on how the movement occurs. Samuels also notes that the Missouri kidnapping statute does not require that a defendant use force, threat, or deception to take or confine a victim. He asserts the Missouri statute is thus broader. The Court of Appeals panel disagreed. While noting that the Kansas statute does not use the word "consent," the Court of Appeals

7

panel could not see a way to unlawfully remove or confine a person without consent other than by force, threat, or deception. *Samuels*, 2020 WL 2089625, at *3 ("Is there a way to unlawfully remove or confine another person without his or her consent that would not be accomplished by force, threat, or deception? We fail to see a way."). It held the Missouri statute was narrower because, under the Kansas statute, a kidnapping can occur even if the victim consents to the movement or confinement if the kidnapper uses force, threat, or deception. 2020 WL 2089625, at *3 ("a person could be taken by deception *with* his or her consent"). We agree.

Without question, the Missouri statute focuses on the victim and consent by using the words "his consent." In contrast, consent is not an element in Kansas' kidnapping statute. See *State v. Alqadi*, No. 92,349, 2005 WL 2839983 (Kan. App. 2005) (unpublished opinion). But examining the meaning and import of a consent requirement reveals how Kansas law is broader than Missouri's statute.

"Consent" is commonly understood to mean "[a] voluntary yielding to what another proposes or desires; agreement, approval, or permission regarding some act or purpose, esp. given voluntarily by a competent person; legally effective assent." Black's Law Dictionary 380 (11th ed. 2019). As Black's Law Dictionary recognizes, "[c]onsent may be a defense to a crime if the victim has the capacity to consent and if the consent negates an element of the crime or thwarts the harm that the law seeks to prevent." See *State v. Porter*, 241 S.W.3d 385, 394 (Mo. Ct. App. 2007) ("Obviously, if A invites B to accompany him to a particular place, and B consents to go, there is no kidnapping, even if A has a hidden wrongful purpose, such as to steal from B.").

While the Missouri statute makes consent an element and Kansas' does not, Kansas caselaw recognizes that consent can be a defense to a kidnapping charge. In *State*

8

*v. Cabral*, 228 Kan. 741, 744-45, 619 P.2d 1163 (1980), this court held the State did not present sufficient evidence to prove the crime of kidnapping because the evidence showed the alleged victim consented to the taking and confinement. The *Cabral* court did not engage in any statutory analysis but seemed to view the evidence of consent as a defense to the charge. Thus, the Missouri statute is not broader than Kansas' legal requirements.

But that is not our test. We look instead to the stated statutory elements. *Wetrich*, 307 Kan. at 562; see *Mathis*, 136 S. Ct. at 2248. Even when examining elements, as the Court of Appeals panel held, the lack of a consent element does not make the Kansas statute narrower than the Missouri statute. The Kansas statute incorporates the concept of consent by requiring proof of force, threat, or deception—actions that, if present, separate acquiescence or submission to movement or confinement from voluntary consent. See *Samuels*, 2020 WL 2089625, at *3. And the Kansas statute does not require that the alleged kidnapper direct the force, threat, or deception at the victim. Thus, a victim could consent but do so involuntarily if the kidnapper, for example, used force against or threatened a third party. And the victim could consent but have been deceived. In these ways, the Kansas kidnapping statute is broader than the Missouri statute.

Samuels, however, offers two scenarios that he argues show the Missouri statute was the broader of the two. He asserts kidnapping could occur under the Missouri statute in each of the scenarios but not under the Kansas statute. We disagree. We first note that Samuels' discussion of facts goes beyond a discussion of elements. See *Mathis*, 136 S. Ct. at 2248. Even so, we recognize that some consideration of the factual scenarios proposed may help inform whether any element of the Missouri statute is broader than the Kansas statute. We also make no attempt to apply the facts to the Missouri statute. We instead

9

assume kidnapping occurred under the Missouri statute in both scenarios and next consider how the Kansas statute applies to Samuels' hypothetical scenarios.

In Samuels' first scenario, someone seeking to avoid a child services representative obtaining a DNA sample to find paternity moves a child to a different floor of a hospital. In arguing these facts would not meet the elements of the Kansas statute, Samuels does not consider the meaning of the word "force" or "deception." In fact, the actor in this scenario used force and deception to remove the child.

Force is "[p]ower, violence, or pressure directed against a person *or thing*." (Emphasis added.) Black's Law Dictionary 787 (11th ed. 2019); see *Johnson v. United States*, 559 U.S. 133, 138-39, 130 S. Ct. 1265, 176 L. Ed. 2d 1 (2010) (discussing definitions of "force" and recognizing it can be used against a thing). Other definitions expand on the meaning of force as the use of pressure directed against a thing by noting force includes "strength or energy exerted or brought to bear: cause of motion or change: active power." Merriam-Webster Dictionary, *available at* https://www.merriam-webster.com/dictionary/force. Recognizing that the word includes using pressure against a thing, at least some force is involved in moving the infant to the elevator. Force is also applied when pushing the elevator button to send the infant to another floor. This force removed the child.

While Samuels conveniently omits facts about how his actor skirted hospital security protocols, common sense suggests the actor would have acted deceptively by engaging in the pretense of having authority to move the infant. See Black's Law Dictionary 510 (11th ed. 2019) (Deception is "[t]he act of deliberately causing someone to believe that something is true when the actor knows it to be false" or "[a] trick

10

intended to make a person believe something untrue."). Even if force had not been used, this deception would make the action one of kidnapping in Kansas.

As the Court of Appeals panel correctly concluded, Samuels' first "scenario could be force or deception depending on how it played out." *Samuels*, 2020 WL 2089625, at *3.

In Samuels' second scenario, an alleged kidnapper confines an unconscious victim, but the kidnapper did not cause the unconscious state. The would-be kidnapper makes demands in exchange for the victim's release or return. Kidnapping occurs under either statute. An actor commits kidnapping in Missouri only by taking some step to confine the unconscious individual. That is, the perpetrator must take some affirmative step to somehow hold, enclose, shut in, or prevent the unconscious person from leaving; otherwise, the perpetrator has not completed a necessary element of kidnapping as defined by Missouri. Such action requires the use of force toward some person or thing— be it restraining the unconscious person, the closing or locking of a door, or moving objects to form some barrier preventing the person from leaving. And because Kansas' statute requires application of force but not necessarily upon the victim, the application of force necessary to carry out confinement for the Missouri statute meets the requirement that the actor confine such person through use of force, threat, or deception.

While Kansas and Missouri statutes differ in phrasing, both criminalize the same conduct. In fact, Kansas' statute is broader in that it allows conviction when force, threat, or deception is applied to a thing or third person.

11

## 2. Ransom

Samuels next asserts that the Missouri kidnapping statute is broader than Kansas' because Missouri's prescribed intent is "holding that person for ransom or reward, or for any other act to be performed or not performed for the return or release of that person," while Kansas prohibits taking or confining a person "for ransom." Compare Mo. Rev. Stat. § 565.110.1 (2004) with K.S.A. 2017 Supp. 21-5408(a)(1).

The Court of Appeals looked at the meaning of "ransom" and concluded Missouri's statute was not broader. See *Samuels*, 2020 WL 2089625, at *3; see *Valdiviezo-Martinez*, 313 Kan. at 617-18, 630 (Kansas courts give common words their ordinary meaning when interpreting statutes).

Ransom is defined as "1. Money or other consideration demanded or paid for the release of a captured person or property. See kidnapping. 2. The release of a captured person or property in exchange for payment of a demanded price." Black's Law Dictionary 1511 (11th ed. 2019). Merriam-Webster also defines ransom in terms of consideration: "a consideration paid or demanded for the release of someone or something from captivity." Merriam-Webster Dictionary, *available at* https://www.merriam-webster.com/dictionary/ransom.

Consideration contemplates action or inaction if such action or inaction is obtained by a bargained-for exchange. Black's Law Dictionary defines consideration as "[s]omething (such as an act, a forbearance, or a return promise) bargained for and received by a promisor from a promisee; that which motivates a person to do something." Black's Law Dictionary 382 (11th ed. 2019). And Merriam-Webster defines the term as "6 a:  recompense, payment; b:  the inducement to a contract or other legal transaction

12

*specifically*: an act or forbearance or the promise thereof done or given by one party in return for the act or promise of another." Merriam-Webster Dictionary, *available at* https://www.merriam-webster.com/dictionary/consideration.

Based on these definitions, the Court of Appeals panel concluded Kansas' statute encompasses "a reward and any other act to be performed or not performed for the return or release of a person. The elements are therefore identical." See *Samuels*, 2020 WL 2089625, at *3.

Before us, Samuels argues the term "ransom" is unambiguous, so the Court of Appeals erred by looking outside the statute. He also argues the Kansas statute does not include the other acts described in Missouri's statute. But the panel did not conclude the term was unclear; it merely did what Kansas courts regularly do—consult dictionary sources to explain the meaning of a common word. E.g., *Valdiviezo-Martinez*, 313 Kan. at 626; *State v. Stanley*, 312 Kan. 557, 570, 478 P.3d 324 (2020). Recourse to those dictionaries shows ransom involves receipt of some consideration, which may be action or inaction engaged in or refrained from in exchange for a commitment from another actor—here the kidnapper's promise to return or release of the victim. Thus, ransom as used in Kansas' statute encompasses the same concepts described in more detail in Missouri's kidnapping statute.

Samuels criticizes the panel's conclusion that it "must decide whether the wording 'or reward, or for any other act to be performed or not performed for the return or release of that person' in the Missouri statue is superfluous or redundant." *Samuels*, 2020 WL 2089625, at *3. Samuels properly points out that this conflicts with the fundamental rule of statutory interpretation that the Legislature does not intend to enact superfluous or redundant legislation. But removing this comment from the panel's analysis does not

13

change the conclusion that a comparison of Kansas' statute with that of Missouri by considering the meaning of ransom shows the Missouri statute is no broader than Kansas'. Both equally support a kidnapping conviction when a perpetrator asks for action or inaction, monetary compensation, or some other "reward" in exchange for the return or release of the victim.

Alternatively, Samuels asks us to conclude Kansas' use of the word "ransom" is ambiguous because Missouri chose to include added language in its statute. But Samuels does not point us to any case in which the rule of lenity was applied in favor of a defendant when an ambiguity arose because the term being considered was described differently by a legislature in a different state. Generally, the rule applies when there are two reasonable and sensible interpretations of a single statute. See *State v. Coman*, 294 Kan. 84, 96-97, 273 P.3d 701 (2012). And this court typically looks to "widely accepted definitions" of terms to discern the word's plain meaning—that is, before deciding whether a word is ambiguous. See *Valdiviezo-Martinez*, 313 Kan. at 626; *Stanley*, 312 Kan. at 570. Here, both legal and lay dictionaries define ransom by reference to consideration, which both legal and lay dictionaries define to include action and inaction secured by a bargained-for exchange. There is no ambiguity requiring recourse to the rule of lenity.

In sum, given the common meaning of the word ransom as used in the Kansas kidnapping statute, the Missouri statute does not use a broader intent element than used in Kansas to prove kidnapping.

14

Samuels also argues the United States Constitution mandates the *Wetrich* test, an issue we did not resolve in *Wetrich* because the court's resolution using statutory interpretation made it unnecessary to reach the constitutional question. See *Wetrich*, 307 Kan. at 558. Here, as in *Wetrich*, statutory interpretation resolves the issue. As a result, we do not reach the question of whether the Constitution mandates this approach.

Based on statutory interpretation, we hold the Missouri crime of felony first-degree kidnapping, Mo. Rev. Stat. § 565.110 (2004), is comparable to kidnapping as defined by K.S.A. 2017 Supp. 21-5408, a severity level 3, person felony. A sentencing judge thus properly classifies a Missouri kidnapping under Mo. Rev. Stat. § 565.110 (2004) as a person offense when calculating a defendant's criminal history score under the revised KSGA when sentencing for a crime committed before May 23, 2019. As a result, the sentencing judge properly scored Samuels' Missouri kidnapping as a person felony.

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.