NOT DESIGNATED FOR PUBLICATION

No. 126,134

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SCOTT LYNN THORNTON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Logan District Court; KEVIN BERENS, judge. Submitted without oral argument. Opinion filed February 16, 2024. Sentence vacated and case remanded for resentencing.

*Emily Brandt*, of Kansas Appellate Defender Office, for appellant.

*Craig L. Uhrich*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before BRUNS, P.J., COBLE and PICKERING, JJ.

PER CURIAM: After Scott Thornton pled guilty to sexual exploitation of a child, the district court imposed the persistent sex offender enhancement to double his maximum presumptive prison term. On appeal, Thornton persuasively argues the district court erred when calculating his criminal history score and imposing the enhanced sentence. First, his criminal history score included an out-of-state offense that is not classified as a crime in the convicting jurisdiction. Second, Thornton's prior federal conviction for possession of child pornography does not have a comparable Kansas crime which would qualify Thornton as a persistent sex offender. Accordingly, we vacate Thornton's sentence and remand to the district court for resentencing.

1

After an investigation revealed Thornton's possession of child pornography images over several dates spanning from August 2018 through August 2020, the State charged him with 27 counts of sexual exploitation of a child, in violation of K.S.A. 2018 Supp. 21-5510(a)(2), (b)(1)(A). In keeping with a plea agreement, Thornton pled guilty to two counts of sexual exploitation of a child in August 2022. In exchange for his plea, the State dismissed the remaining 25 charges and agreed to recommend the standard grid box sentences to be served concurrently. Thornton agreed not to seek a dispositional or durational departure, but the parties did not reach an agreement regarding the application of any special rules.

After Thornton pled guilty, the district court ordered a presentence investigation (PSI) report. The PSI scored Thornton's criminal history as C, largely due to two listed federal convictions from 2007:  possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B); and criminal forfeiture, in violation of 18 U.S.C. § 2253(a)(3). The PSI indicated Special Sentencing Rule 5, K.S.A. 2018 Supp. 21-6804(j), applied to qualify Thornton as a persistent sex offender. The application of Special Rule 5 more than doubled the anticipated standard grid box sentence the parties negotiated under the plea agreement.

Although he had agreed not to seek a departure, Thornton sought a departure from application of the special rule. He argued neither party anticipated the application of Special Rule 5 and asked the district court to consider:  "The parties negotiated in good faith toward a specific time frame of incarceration, to be what all parties believed to be the offender to be classified as 57 months duration, with the second count to be recommended to be served concurrently with the primary offense." Thornton further reasoned his prior criminal conviction was more than 15 years old, and Special Rule 5

should not apply because his prior federal offense is not comparable to his current crime under the Kansas statutes. The State did not respond to Thornton's motion.

At sentencing, neither party objected to Thornton's criminal history being scored a C. After outlining the presumptive prison sentence for his crimes of conviction, the district court heard Thornton's argument for a departure. In support of his motion, Thornton's father testified to Thornton's limited cognitive abilities, his "[p]oor" capacity for making good decisions, and the extensive time periods Thornton spent in mental health and psychiatric institutions.

Thornton also testified in support of his motion. He revealed he successfully completed sex offender treatment after his release from incarceration on his federal conviction for possession of child pornography. And he denied ever having physical contact with a minor and denied creating or disseminating child pornography. Thornton also testified to his own sexual abuse at the hands of a neighbor when he was 9 or 10 years old.

In his closing argument on the motion, Thornton's defense counsel clarified he was only seeking a durational departure from Special Rule 5, contending the rule cannot apply because Thornton's prior federal crime is not comparable to the Kansas crime. The State indicated the parties "did not discuss the special rules" because it was "focused at the time on . . . the resulting criminal history for when Mr. Thornton does get out of prison." The State concluded it "would stand mute and just ask the Court to follow the plea agreement."

The district court determined the federal statute for possession of child pornography—Thornton's prior conviction—was narrower than Kansas' sexual exploitation of a child statute based on the federal statute's inclusion of an element regarding interstate commerce. The district court found the statutes comparable, and

3

determined because the federal and state statutes were comparable, the prior federal conviction could be used to qualify Thornton as a persistent sex offender. The district court denied Thornton's alternative request to depart from the persistent sex offender enhancement, finding Thornton presented mitigating reasons, but not substantial and compelling reasons, to depart from the application of Special Rule 5.

Ultimately, the district court sentenced Thornton to a controlling 120 months' imprisonment based on his criminal history score of C and the application of Special Rule 5.

Thornton appeals his sentence.

### THORNTON'S CRIMINAL HISTORY SCORE IS INCORRECT

In his first claim on appeal, Thornton argues the district court erred in calculating his criminal history score. He contends the district court incorrectly calculated his criminal history because his score included the federal forfeiture as a prior offense, yet forfeiture is not a criminal offense under federal law. In response, the State argues Thornton did not meet his burden of showing his prior conviction as invalid for scoring his criminal history.

As both parties concede, Thornton did not object to his criminal history score at the district court. In fact, Thornton admitted to his criminal history score when prompted at sentencing. Thornton then raises this claim for the first time on appeal.

Generally, issues not raised below cannot be raised for the first time on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). But as the parties point out, Thornton can challenge his criminal history score for the first time on appeal because misclassification of a prior conviction creates an illegal sentence, and illegal sentence

4

claims may be raised at any time. See *State v. Roberts*, 314 Kan. 316, 319-20, 498 P.3d 725 (2021) ("[A] challenge to a district court's criminal history score calculation presents an illegal sentence claim."); *State v. Hambright*, 310 Kan. 408, 411, 447 P.3d 972 (2019) ("Under K.S.A. 22-3504, '[t]he court may correct an illegal sentence at any time,' and, therefore, this court may consider an illegal sentence challenge for the first time on direct appeal."); see also K.S.A. 2022 Supp. 21-6820(e)(2), (e)(3) (permitting an appellant to challenge on appeal that the sentencing court did not appropriately include or classify a prior conviction for criminal history purposes).

That said, when offenders make such claims for the first time on appeal, the burden of proof shifts to the offender to prove their criminal history by a preponderance of the evidence. See *Roberts*, 314 Kan. at 322 (discussing the shift in the burden of proof under K.S.A. 2020 Supp. 21-6814[c] when the State provides the criminal history at sentencing and the offender does not object). The parties agree this standard applies to Thornton's claim.

*The criminal forfeiture conviction should not have been scored in Thornton's criminal history.*

As noted, the criminal history compiled in the PSI contains two federal convictions:  possession of child pornography under 18 U.S.C. § 2252(a)(4)(B); and criminal forfeiture under 18 U.S.C. § 2253(a)(3). The PSI classified the possession conviction as a person felony and the criminal forfeiture conviction as a nonperson felony.

Thornton argues the criminal forfeiture conviction should not have been scored in his criminal history because "[t]he United States, the convicting jurisdiction, does not classify criminal forfeiture as a criminal offense." Instead, he reasons criminal forfeiture is a part of the sentence, and is simply punishment, not a separate substantive offense.

5

Thornton's argument specifically challenging the scoring of a federal criminal forfeiture for criminal history purposes presents a narrow and novel question. As Thornton explains, our Supreme Court has found sentencing courts are precluded from designating an offense as a felony or misdemeanor when the out-of-state offense "is neither a felony nor a misdemeanor 'according to the convicting jurisdiction.'" *State v. Smith*, 309 Kan. 929, 939, 441 P.3d 472 (2019). The *Smith* court concluded that neither of Smith's out-of-state ordinance violations could be scored when calculating his criminal history because those ordinances were not classified as misdemeanors or felonies in Missouri, where he was previously convicted. 309 Kan. at 939-40.

Examining whether the federal criminal forfeiture provision should be included in Thornton's criminal history involves interpretation of the revised Kansas Sentencing Guidelines Act (KSGA). Interpretation of the KSGA is a question of law subject to unlimited review. *Smith*, 309 Kan. at 932; *State v. Keel*, 302 Kan. 560, 571, 357 P.3d 251 (2015).

The fundamental rule of statutory interpretation is that "the court gives effect to the legislative intent as expressed in the statute." 309 Kan. at 932. Appellate courts should attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *State v. Ayers*, 309 Kan. 162, 163-64, 432 P.3d 663 (2019). If the statute is plain and unambiguous, this court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. 309 Kan. at 164. In this vein, the court need not resort to statutory construction if the statute is not ambiguous. *State v. Pulliam*, 308 Kan. 1354, 1364, 430 P.3d 39 (2018).

Under the KSGA, an offender's sentencing range is determined by the severity level of the present crime of conviction and the offender's criminal history score. *Smith*, 309 Kan. at 933. Relevant to our analysis, K.S.A. 2022 Supp. 21-6811(e) governs the

6

process for translating "a prior out-of-state crime into the language of the KSGA for purposes of calculating criminal history." *Smith*, 309 Kan. at 934. Classifying a previous out-of-state conviction under this subsection is a two-step process:

> "First, the sentencing court must 'classify the crime as a felony or misdemeanor consistent with the classification made by the convicting jurisdiction.' *State v. Lackey*, 45 Kan. App. 2d 257, 261, 246 P.3d 998 (2011). Then, it must classify the crime as a person or nonperson offense by referring to comparable offenses under the Kansas criminal code in effect when the defendant committed the current crime of conviction. See *State v. Wetrich*, 307 Kan. 552, Syl. ¶ 2, 412 P.3d 984 (2018)." *Smith*, 309 Kan. at 934-35.

But our review of Thornton's limited question takes us outside the typical standards for reviewing claims regarding the scoring of prior convictions, such as a statutory analysis of the prior out-of-state conviction to the comparable Kansas crime. See, e.g., *State v. Wetrich*, 307 Kan. 552, 561-62, 412 P.3d 984 (2018) (thoroughly examining the classification of prior offenses for criminal history purposes). Here, Thornton simply contends the United States—the previous convicting jurisdiction—does not define criminal forfeiture under 18 U.S.C. § 2253 as a crime at all—neither a misdemeanor nor a felony.

Thornton points us to the United States Supreme Court's opinion in *Libretti v. United States,* 516 U.S. 29, 116 S. Ct. 356, 133 L. Ed. 2d 271 (1995). In *Libretti*, the defendant's claim did not involve criminal history, but he argued a lower court's forfeiture order should have been set aside, or modified, because the lower court did not "establish a 'factual basis' for forfeiture of the property covered by the order under Federal Rule of Criminal Procedure 11(f)." 516 U.S. at 37-38. In its analysis, the Court reviewed its own precedent to determine Congress intended forfeiture as a punishment, "not as a separate substantive offense." 516 U.S. at 39. The Court reasoned:

"The text of the relevant statutory provisions makes clear that Congress conceived of forfeiture as punishment for the commission of various drug and racketeering crimes. A person convicted of engaging in a continuing criminal enterprise 'shall be *sentenced . . .* to the forfeiture prescribed in section 853.' 21 U.S.C. § 848(a) (emphasis added). Forfeiture is imposed 'in addition to any other *sentence*.' 21 U.S.C. § 853(a) (emphasis added). See also 18 U.S.C. § 1963 (forfeiture is imposed 'in addition to any other *sentence*' for a violation of the Racketeer Influenced and Corrupt Organizations Act [RICO]). The legislative history of the Comprehensive Crime Control Act of 1984, Pub. L. 98-473, Tit. II, 98 Stat. 1976, also characterizes criminal forfeiture as punishment. See, e.g., S. Rep. No. 98-225, p. 193 (1983) (criminal forfeiture 'is imposed as a sanction against the defendant upon his conviction'). Congress plainly intended forfeiture of assets to operate as punishment for criminal conduct in violation of the federal drug and racketeering laws, not as a separate substantive offense." *Libretti*, 516 U.S. at 39.

More applicable to Thornton's claim here, the *Libretti* Court went on to reiterate that United States Supreme Court precedents "have likewise characterized criminal forfeiture as an aspect of punishment imposed following conviction of a substantive criminal offense." 516 U.S. at 39. The Court summarized the applicable precedent:

"In *Alexander v. United States*, 509 U.S. 544, 113 S. Ct. 2766, 125 L. Ed. 2d 441 (1993), we observed that the criminal forfeiture authorized by the RICO forfeiture statute 'is clearly a form of monetary punishment no different, for Eighth Amendment purposes, from a traditional "fine."' *Id*., at 558, 113 S. Ct., at 2775-2776. Similarly, in *United States v. $8,850*, 461 U.S. 555, 103 S. Ct. 2005, 76 L. Ed. 2d 143 (1983), we recognized that a 'criminal proceeding . . . may often include forfeiture as part of the sentence.' *Id*., at 567, 103 S. Ct., at 2013. And in *Austin v. United States*, 509 U.S. 602, 113 S. Ct. 2801, 125 L. Ed. 2d 488 (1993), we concluded that even the *in rem* civil forfeiture authorized by 21 U.S.C. §§ 881(a)(4) and (a)(7) is punitive in nature, so that forfeiture imposed under those subsections is subject to the limitations of the Eighth Amendment's Excessive Fines Clause. 509 U.S., at 619-622, 113 S. Ct., at 2810-2812." *Libretti*, 516 U.S. at 39-40.

The Court recognized its prior holding in which it stated "'forfeiture is a substantive charge in the indictment against a defendant'" but clarified that statement "intended only to suggest that a defendant cannot escape an otherwise appropriate forfeiture sanction by pointing to his need for counsel to represent him [under a Sixth Amendment claim] on the underlying charges." 516 U.S. at 40. The Court pointedly noted that "[e]lsewhere in the opinion we recognized that forfeiture is a 'criminal sanction' . . . and is imposed as a sentence under [21 U.S.C. § 853]. [Citations omitted.]" 516 U.S. at 40.

In response to Thornton's understandable reliance on *Libretti*, the State contends the case is distinguishable because (1) the opinion addresses forfeiture under a different federal code, and (2) the opinion addresses an unrelated issue—whether a factual basis is required for a forfeiture agreed to in a plea agreement.

But the State's interpretation of *Libretti* ignores the United States Supreme Court's application of the same principle in other cases as noted above. While *Libretti* discussed forfeiture in the context of the Controlled Substances Act, 21 U.S.C. § 801, et seq., other cases analyzed, for example, forfeiture alongside undeclared currency (*United States v. $8,850*, 461 U.S. 555, 556, 103 S. Ct. 2005, 76 L. Ed. 2d 143 [1983]); forfeiture as monetary punishment for RICO crimes (*Alexander v. United States*, 509 U.S. 544, 558, 113 S. Ct. 2766, 125 L. Ed. 2d 441 [1993]); and examined whether forfeiture is subject to the Eighth Amendment's Excessive Fines Clause (*Austin v. United States*, 509 U.S. 602, 604, 113 S. Ct. 2801, 125 L. Ed. 2d 488 [1993]). Although the *Libretti* Court was ultimately considering whether the lower court must establish a factual basis for the forfeiture of property under Federal Rule of Criminal Procedure 11(f), the applicable precedents discussed by the Court still support Thornton's argument, because each analysis in those precedents finds forfeiture is only an event generated by the commission of an applicable crime.

9

Here, Thornton's criminal forfeiture occurred under 18 U.S.C. § 2253(a)(3). Like the criminal forfeiture provisions identified in *Libretti*, a person must be convicted of one of the criminal offenses delineated under the statute before forfeiture is triggered. See 18 U.S.C. § 2253(a) ("A person who is convicted of an offense under this chapter involving a visual depiction described in section 2251 . . . 2252 . . . , shall forfeit to the United States such person's interest in . . . ."). Notably, this statute also references criminal forfeiture under the Controlled Substances Act, stating: "Section 413 of the Controlled Substances Act (21 U.S.C. § 853) with the exceptions of subsections (a) and (d), applies to the criminal forfeiture of property pursuant to subsection (a)." 18 U.S.C. § 2253(b). The applicable subsections of 21 U.S.C. § 853 define "'property'" and third-party transfers. 21 U.S.C. § 853(b), (c). And because 18 U.S.C. § 2253(b) references the criminal forfeiture provisions under 21 U.S.C. § 853, we feel obligated to accept that *Libretti* controls the issue.

In addition to the analogous precedent supporting Thornton's claim, he also correctly points out the federal forfeiture statute at issue, 18 U.S.C. § 2253, lacks a punishment scheme. The statute does not provide for fines, imprisonment terms, or any punishment for a violation of the statute. Rather, the statute is triggered by the violation of a different substantive criminal act. On the other hand, the plain language of substantive crimes, such as Thornton's conviction under 18 U.S.C. § 2252(a)(4)(B), delineate the specific punishments for violations of the provisions. 18 U.S.C. § 2252(b)(2) ("Whoever violates . . . paragraph [4] of subsection [a] shall be fined under this title or imprisonment not more than 10 years, or both.").

Because the United States Supreme Court determined similar criminal forfeiture provisions were intended to operate as punishment for criminal conduct, not as separate substantive offenses, we must accept Thornton's argument. See *Libretti*, 516 U.S. at 38-40. Like the criminal forfeiture provisions identified in *Libretti*, criminal forfeiture under 18 U.S.C. § 2253 is a form of punishment for the violations of the substantive crimes

delineated in subsection (a). Importantly, possession of child pornography, in violation of 18 U.S.C. § 2252, is among the substantive offenses identified in 18 U.S.C. § 2253 as requiring criminal forfeiture as a punishment once convicted. 18 U.S.C. § 2253(a) ("A person who is convicted of an offense under this chapter involving a visual depiction described in section . . . 2252 . . . of this chapter . . . ."). And as a result, it would follow that criminal forfeiture under 18 U.S.C. § 2253 is not classified as a separate substantive criminal offense.

And although Thornton does not mention as much, it likewise does not appear that the State of Kansas considers forfeiture a substantive criminal offense under the Kansas Criminal Code. For example, although the possession of drug proceeds is a crime under K.S.A. 2022 Supp. 21-5716, that statutory scheme does not provide for the forfeiture of those proceeds, but merely mentions the State's right to seek forfeiture of any such proceeds. K.S.A. 2022 Supp. 21-5716(a). And though K.S.A. 2022 Supp. 21-6330(b) permits a district court to issue orders divesting a defendant of an interest in property and to suspend or revoke any state license or permit, again this statute indicates such property is subject to "civil forfeiture pursuant to the Kansas standard asset seizure and forfeiture act, K.S.A. 60-4101 et seq." Other state crimes analogous to the federal crimes discussed here do not include forfeiture provisions but are instead included in the list of offenses giving rise to civil forfeiture under the Kansas Code of Civil Procedure, through the Kansas Standard Asset Seizure and Forfeiture Act, K.S.A. 60-4101 et seq. See K.S.A. 2022 Supp. 60-4104 (listing nearly 30 covered offenses giving rise to forfeiture, including such crimes as violations involving controlled substances, theft, and Medicaid fraud). Aside from a very specific forfeiture of property of livestock found in K.S.A. 2022 Supp. 22-4807a, it appears there exists no separate, substantive state crime of forfeiture. See K.S.A. 2022 Supp. 21-6811(e)(1)(B), (C) ("If the state of Kansas does not have a comparable offense in effect on the date the current crime of conviction was committed, the out-of-state crime shall not be used in classifying the offender's criminal history.").

Because the United States does not classify criminal forfeiture as a criminal offense, the district court erred by scoring the criminal forfeiture as an out-of-state nonperson felony. Without this nonperson felony, Thornton's criminal history consists of one person felony and no nonperson felony—changing Thornton's criminal history from C to D. See K.S.A. 2022 Supp. 21-6809 (defining criminal history category "[D]" as including "one adult conviction or juvenile adjudication for a person felony, but no adult conviction or juvenile adjudications for a nonperson felony").

As a result, we vacate Thornton's sentence and remand to the district court for resentencing in conjunction with these findings. See *Smith*, 309 Kan. at 940 (disposing of improper scoring claim by vacating sentence and remanding with directions on resentencing).

THORNTON'S CLASSIFICATION AS A PERSISTENT SEX OFFENDER IS INCORRECT

In his second claim on appeal, Thornton contends the district court erred in finding his prior federal conviction of possession of child pornography was comparable to the Kansas offense of sexual exploitation of a child. He argues the district court erroneously classified him as a persistent sex offender, which resulted in an illegal sentence "at least sixty months longer than allowed by Kansas law." In response, the State contends Thornton's argument is unsupported by the facts and law, and reasons that *Wetrich* applies but was wrongfully decided.

*Applicable Legal Principles*

Interpretation of a sentencing statute is a question of law and our review is unlimited. *State v. Moore*, 309 Kan. 825, 828, 441 P.3d 22 (2019). The KSGA contains a special sentencing provision—Special Sentencing Rule 5—which requires the district court to sentence persistent sex offenders to double the maximum presumptive prison

term for the offenders' crime of conviction. K.S.A. 2018 Supp. 21-6804(j). Thornton argues the district court erred in classifying him as a persistent sex offender under this section.

At the time of Thornton's current crime (and currently, as the law has not changed substantively), K.S.A. 2018 Supp. 21-6804(j)(2) defined a persistent sex offender, in part, as a person who:

> "(A)(i) Has been convicted in this state of a sexually violent crime, as defined in K.S.A. 22-3717, and the amendments thereto; and
> "(ii) at the time of the conviction under subsection(j)(2)(A)(i) has at least one conviction for a sexually violent crime, as defined in K.S.A. 22-3717, and amendments thereto, in this state or *comparable felony under the laws* of another state, *the federal government*, or a foreign government." (Emphases added.)

Thornton meets the requirement of the first clause, subsection (j)(2)(A)(i), as his current crime of conviction under K.S.A. 2018 Supp. 21-5510(a)(2) is included in the definition of a sexually violent crime under K.S.A. 2018 Supp. 22-3717(d)(5)(H). We must then examine his prior conviction under subsection (j)(2)(A)(ii). Because the Kansas crime of sexual exploitation of a child, K.S.A. 2018 Supp. 21-5510(a)(2), is most analogous, we are tasked with comparing it with Thornton's prior federal crime of possession of child pornography, 18 U.S.C. § 2252(a)(4)(B).

But what test are we to use for such comparison? An overview of how we are tasked with such comparisons is beneficial. In 2013, the United States Supreme Court outlined a "'categorical approach'" to compare the statutory elements of crimes when a prior criminal conviction is used to enhance a defendant's sentence. *Descamps v. United States*, 570 U.S. 254, 257, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013). Then, in *State v. Dickey*, 301 Kan. 1018, 1038-39, 350 P.3d 1054 (2015), our Supreme Court adopted the

13

categorical approach outlined in *Descamps* to determine how a prior burglary conviction should be classified under the KSGA. The *Dickey* court explained:

> "A sentencing court applies the categorical approach when the statute forming the basis of the defendant's prior conviction contains a single set of elements constituting the crime. A sentencing court simply compares 'the elements of the statute forming the basis of the defendant's conviction with the elements of the "generic" crime.'" 301 Kan. at 1037.

Then, in 2018, the Kansas Supreme Court adopted the "identical-or-narrower" rule in *Wetrich* that specifically applies when comparing out-of-state convictions "to an offense under the Kansas criminal code." 307 Kan. at 561-62. "In other words, the elements of the out-of-state crime must be identical to, or narrower than, the elements of the Kansas crime to which it is being referenced." 307 Kan. at 562. Although *Wetrich* was abrogated by the statutory amendment of K.S.A. 2019 Supp. 21-6811(e)(3)(B) in the context of classifying prior convictions for criminal history purposes—determining whether prior convictions should be scored as person or nonperson and felonies or misdemeanors—it remains the controlling standard to determine the comparability of an offense under the persistent sex offender statute, K.S.A. 2018 Supp. 21-6804(j), as this statute has not been similarly amended. See *State v. Baker*, 58 Kan. App. 2d 735, Syl. ¶ 3, 475 P.3d 24 (2020).

Thornton contends the Kansas crime is broader than the federal crime because the Kansas crime contains an "additional intent to 'arouse or satisfy the sexual desire'" element that the federal crime lacks. See K.S.A. 2018 Supp. 21-5510(a)(2). In response, the State suggests the facts underlying Thornton's current and prior crimes are so similar this supports the district court's finding that he is a persistent sex offender. But as Thornton points out, the Sixth Amendment to the United States Constitution prohibits sentencing courts from engaging in judicial fact-finding, other than recognizing prior convictions, to enhance a defendant's sentence. *Apprendi v. New Jersey*, 530 U.S. 466,

490, 120 S. Ct. 2348, 147 L. Ed. 435 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). And under *Wetrich*, sentencing courts must compare the elements of the crimes, not the facts which made up the crimes. *Wetrich*, 307 Kan. at 562. ("For an out-of-state conviction to be comparable to an offense under the Kansas criminal code, the elements of the out-of-state crime cannot be broader than the elements of the Kansas crime."). See *State v. Samuels*, 313 Kan. 876, 879-80, 492 P.3d 404 (2021) ("'Facts . . . are mere real-world things—extraneous to the crime's legal requirements.'"); see also *State v. Gales*, 312 Kan. 475, 485, 476 P.3d 412 (2020) (this "comparison [must] be made only on the statutory elements of the statutes being compared—without reference to evidence surrounding the prior conviction").

Thornton's only prior conviction that could be considered "a sexually violent crime, as defined in K.S.A. 22-3717" for the purpose of finding him a persistent sex offender under K.S.A. 2018 Supp. 21-6804(j)(2)(A)(ii), is his 2007 federal conviction for possession of child pornography under 18 U.S.C. § 2252(a)(4)(B). To determine whether this prior offense is comparable under the persistent sex offender statute, the elements of the federal crime must be compared with the elements of the comparable Kansas offense.

A side-by-side comparison of the applicable sections of the federal and state statutes is helpful:

15

| Possession of child pornography; 18 U.S.C. § 2252(a)(4)(B). | Sexual exploitation of a child; K.S.A. 2018 Supp. 21-5510(a)(2). |
|---|---|
| "(a) Any person who— <br><br> . . . . <br><br> (B) knowingly possesses . . . , 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if— <br><br> (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and <br><br> (ii) such visual depiction is of such conduct." | "(a) Except as provided in K.S.A. 2018 Supp. 21-5610 and 21-5611, . . . sexual exploitation of a child is: <br><br> . . . . <br><br> (2) possessing any visual depiction of a child under 18 years of age shown or heard engaging in sexually explicit conduct *with intent to* arouse or satisfy the sexual desires or appeal to the prurient interest of the offender or any other person." (Emphasis added.) |

When Thornton argued against the application of the persistent sex offender enhancement before the district court, the court found the federal statute was narrower than the Kansas statute based on the federal crime's inclusion of an element of interstate commerce. The district court did not, however, consider the intent element contained in the Kansas crime, which now forms the basis of Thornton's argument on appeal. He maintains that under the federal statute, merely knowingly possessing child pornography is a crime, but under the state law, the offender must possess the material with the additional intent to "arouse or satisfy the sexual desires or appeal to the prurient interest of the offender or any other person." K.S.A. 2018 Supp. 21-5510(a)(2). Because this additional intent element is present in the Kansas statute, this makes the federal statute elementally broader than the state law and not comparable under the *Wetrich* analysis.

The intent element becomes important because every element of the federal statute must be narrower than, or identical to, the Kansas statute. See *State v. Moore*, 307 Kan. 599, 602, 412 P.3d 965 (2018). In *Moore*, the Kansas Supreme Court disagreed with our

16

court's use of a "single element theory of comparability" when it found a prior Oregon conviction for burglary was not comparable to the Kansas burglary offense because the intent elements differed. 307 Kan. at 602. The *Moore* court reasoned that "[i]f a person can commit a burglary in another state, e.g., Missouri or Oregon, by committing acts or possessing a mental state that would not even constitute the crime of burglary in Kansas (much less a person burglary), it is counterintuitive to declare that the offenses are comparable." 307 Kan. at 602. Applying *Wetrich* to compare the elements of Kansas and Oregon burglary crimes, the *Moore* court explained:

> "In Kansas, burglary—whether a person or nonperson felony—requires that the knowing and unauthorized entry into or remaining within be made 'with intent to commit a felony, theft or sexual battery therein.' K.S.A. 21-3715. In contrast, Oregon's burglary statutes only required that Moore entered the dwelling *'with intent to commit a crime therein*.' (Emphasis added.) See Or. Rev. Stat. §§ 164.225 and 164.215 (1984). Many alternative means may have supported the Oregon mental state element—e.g., intent to engage in disorderly conduct—that would not have been any kind of burglary in Kansas. See *Mathis v. United States*, 579 U.S. [500], 136 S. Ct. 2243, 2256, 195 L. Ed. 2d 604 (2016) (distinguishing alternative elements and alternative means of proving a single element)." *Moore*, 307 Kan. at 603.

Respecting our Supreme Court's analysis, *Moore* supports Thornton's contention that his prior federal crime of conviction is not a comparable crime to Kansas' sexual exploitation of a child for the purpose of finding him a persistent sex offender. As a federal crime, a person can possess child pornography without any "intent to arouse or satisfy the sexual desires or appeal to the prurient interest of the offender or any other person," as is required by the Kansas crime under K.S.A. 2022 Supp. 21-5510(a)(2). A person may possess child pornography without any intent to arouse but nevertheless remain liable under 18 U.S.C. § 2252(a)(4)(B), as the federal crime covers a broader range of conduct. But Kansas has no similar crime for simply possessing child pornography.

Because the intent required under Kansas law is not required under 18 U.S.C. § 2252(a)(4)(B), we must find Thornton's prior conviction under that federal law is not a comparable sexually violent offense under K.S.A. 2018 Supp. 21-6804(j)(2)(A)(ii). Cf. *State v. Whiteman*, No. 123,338, 2022 WL 727633, at *9 (Kan. App.) (unpublished opinion) (applying *Wetrich* and finding the conduct underlying Whiteman's "three prior out-of-state convictions for possession of child pornography was broader than the conduct prohibited by the comparable Kansas statute" prohibiting sexual exploitation of a child, K.S.A. 2016 Supp. 21-5510[a][2]), *rev. denied* 315 Kan. 971 (2022).

Without a prior, comparable sexually violent crime, the district court erred in classifying Thornton as a persistent sex offender. See K.S.A. 2018 Supp. 21-6804(j)(2)(A)(ii). So, Thornton's enhanced sentence is illegal, and we are compelled to vacate and remand for resentencing on this issue.

We must acknowledge that we are duty bound to follow our Supreme Court's precedent in *Wetrich* to mechanically compare the elements of the state and federal crimes to reach this conclusion, unless there is some indication our Supreme Court is departing from its previous position—of which we have none. See *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). But we urge the Supreme Court and the Legislature to examine how "comparable" is defined, specifically in K.S.A. 2022 Supp. 21-6804(j)(2)(A)(ii), and perhaps even more importantly to this case, what Kansas law defines as "sexual exploitation of a child" versus "possession of child pornography." See K.S.A. 2022 Supp. 21-5510; 18 U.S.C. § 2252. We do not deny that, to the general public, the conduct underlying the possession of child pornography under federal law is fundamentally identical to the conduct underlying Thornton's state conviction here. But *Wetrich*'s application here forces our hand.

And, regarding the definition of "comparable" in the context of the persistent sex offender statute, the only definitions included there are what makes an offender

"persistent"—the statute suggests a single prior conviction is required—and the definition of "sexually violent crime" under K.S.A. 2022 Supp. 22-3717. See K.S.A. 2022 Supp. 21-6804(j). But are other comparisons necessary? For example, should we compare whether an offender convicted of each offense is required to register as a sex offender? See, e.g., the Kansas Offender Registration Act, K.S.A. 2022 Supp. 22-4901 et seq. (requiring lifetime registration of sex offender convicted of sexual exploitation of a child); the Sex Offender Registration and Notification Act, 34 U.S.C. § 20901 et seq. (requiring registration of persons convicted of certain federal sex offenses and expanding the definition of "specified offense against a minor" to include possession of child pornography under 34 U.S.C. § 20911[7][G]).

At the end of the day, Kansas presently criminalizes the sexual exploitation of a child if the crime meets a specific intent element. If the Legislature wishes to criminalize simple possession of child pornography—which would have, in this case, qualified Thornton as a persistent sex offender—statutory amendment is necessary.

Because we find the district court erred in sentencing Thornton, we need not address Thornton's third issue on appeal challenging the district court's denial of his motion for a departure sentence. Thornton's motion for a durational departure is rendered moot if the persistent sex offender enhancement does not apply to his sentence. See *State v. Roat*, 311 Kan. 581, 584, 466 P.3d 439 (2020) (discussing mootness).

Sentence vacated and case remanded for resentencing.